1  **Jason K. Singleton**, State Bar #166170
   jason@singletonlawgroup.com
2  **Richard E. Grabowski**, State Bar # 236207
   rgrabowski@mckinleyville.net
3  **SINGLETON LAW GROUP**
4  611 "L" Street, Suite A
   Eureka, CA 95501
5  (707) 441-1177
   FAX 441-1533
6
7  Attorney for Plaintiff, MARCY VELASQUEZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCY VELASQUEZ, <br><br> Plaintiff, <br><br> v. <br><br> HUMBOLDT PETROLEUM, a California corporation, dba 5th STREET SHELL STATION and DOES ONE to FIFTY, inclusive, <br><br> Defendants. | Case No.  C-07-5284 CW <br><br> MOTION FOR SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION <br><br> DATE:  October 2, 2008 <br> TIME:   2:00 p.m. <br> CTRM:  2, 4th Floor |

### I.   MEMORANDUM OF POINTS AND AUTHORITIES

**A.   STATEMENT OF FACTS**

**1.   History**

Humboldt Petroleum requested and received permits from the City of Eureka, California, to construct the Fifth Street Shell, located at 1310 Fifth Street, Eureka, California, on November 22, 1993.  See Declaration of Custodian of Records and attached permit from the City of Eureka Building and Safety Department.  Construction commenced after receipt of the permits.  The Fifth Street Shell sells gas and is also a typical mini-market, selling drinks, candy, sundries, etc.

Plaintiff, Marcy Velasquez, lives at 53 West Center, in Rio Dell, California.  See Declaration of Marcy Velasquez ¶2 (hereafter "Dec of MV").  The Fifth Street Shell is

1  approximately 25.9 miles from Ms. Velasquez's apartment.  Ms. Velasquez shops frequently in
2  the downtown Eureka area and will return to the Fifth Street Shell when it is made accessible.
3  See Dec of MV ¶3.

4        Ms. Velazquez is motion disabled and wheelchair mobile due to the loss of her leg in an
5  auto accident in 1981.   See Dec of MV ¶4.

6        Ms. Velasquez visited the Fifth Street Shell on June 27, 2007, to buy goods and use the
7  bathroom.  See Dec of MV ¶ 5 and Exhibit A.  Ms. Velasquez encountered various barriers to
8  entry including a narrow aisle blocked by the store checkout counter that prevented her from
9  reaching the bathroom in her wheelchair.  Ms. Velasquez subsequently sent a letter to the Fifth
10 Street Shell complaining of the barriers she encountered and requesting the store to fix the
11 defects.  See Dec of MV ¶ 4 and Exhibit A.  No action was taken by the owners of Fifth Street
12 Shell and this action ensued.

13       On January 25, 2008, Gordon Clapp, a licensed California contractor (CA License
14 #509382) and disability access expert, performed a site inspection at the Fifth Street Shell.
15 See Declaration of Gordon Clapp ¶2 (hereafter "Dec of GC").  Mr. Clapp produced the results
16 of his report on February 11, 2008.  See Dec of GC  ¶ 3 and Exhibit A.

17       Mr. Clapp photographed the barriers to access and provided comments concerning his
18 findings at the Fifth Street Shell.  The undisputed evidence observed by Mr. Clapp indicates:

19     a.    The access aisle for the accessible parking spaces has a grade of 4% to
20         7.1%.  See page 2 and paragraph No. 1 with photos in Dec of GC  Exhibit
21         A;

22     b.    The cross slope of the accessible parking space varies from 3.9% to
23         4.2%.  See page 3 and paragraph No. 3 with photos in Dec of GC  Exhibit
24         A;

25     c.    The operable portion of the gas pumps (the credit card key entry system)
26         is available from both a forward approach and a side approach and starts
27         at 58" above the ground and ends at 61" above the ground.  See page 4
28         and paragraph No. 4 with photos in Dec of GC  Exhibit A;

    d.    The clear floor space in front of the single ATM, located in the store, is 25". See page 4 and paragraph No. 5 with photos in Dec of GC Exhibit A;

    e.    The pathway to the restrooms is constricted by an access aisle of 26". See page 5 and paragraph No. 6 with photos in Dec of GC Exhibit A; and

    f.    The sink in the lavatory has approximately 24" to 25" of knee clearance under the bowl of the sink, 27" at the bottom of the sink apron, and the pipes are not insulated. See page 6 and paragraphs No. 8 and 9 with photos in Dec of GC Exhibit A.

These facts have not been disputed by Defendant with any relevant evidence.

**B.    ARGUMENT**

**1.    Summary Adjudication of issues and defenses is within the authority of the Court.**

The court has authority to rule on both defenses and issues in an action.

The court has authority based on *FRCP* Rule 56(a)(c) and (d) to rule in summary judgment on Plaintiff's claims. This includes defenses claimed by Defendants as well as issues inherent in Plaintiff's claim. *FRCP* Rule 56(d) states that if summary judgment is not "rendered on the entire action," the court should determine what facts are not genuinely at issue. These facts are then considered established in the action. ***Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.***, 860 F.Supp. 1448, 1450 (CD CA 1993); also see ***Williams v. Sinclair***, 529 F2d 1383 at (9th Cir. 1975) for the proposition that after denying summary judgment a court may be asked for an order that deems certain facts established.

> In cases that involve complicated fact patterns and multiple causes of action, summary judgment may be granted as to some causes of action but not as to others or as to some issues but not as to others, and as to some parties but not as to others … a careful and meticulous analysis first by the parties, but ultimately by the district court will aid significantly in preventing the waste of private and judicial resources and time.
>
> ***Barker v. Norman***, 651 F.2d 1107 at 1123 (Fifth Cir., 1981).

Therefore, where the case is not fully adjudicated on the facts, the Court should determine what facts are established to reduce time at trial and prevent the waste of judicial

resources.

**2.    Standard for Summary Judgment.**

Upon a showing that there is no genuine issue of material fact the court may grant summary judgment on all or any part of Plaintiff's claim. **FRCP** Rule 56(a). **FRCP** Rule 56(c) states that the court shall grant summary judgment if:

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Material facts are determined by the substantive governing law. The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. ***Anderson v. Liberty Lobby, Inc.,*** 477 U.S. 242 at 248 and 249 (1986).

**3.    Ms. Velasquez is a disabled person within the meaning of the ADA, was harmed by the failure of Fifth Street Shell to remove barriers to access, and has standing to bring this action.**

Ms. Velasquez is motion disabled and wheelchair disabled and is therefore a disabled person under the meaning of the ADA. Ms. Velasquez was harmed when she visited the Fifth Street Shell by the owners failure to remove barriers to access.

The American's with Disabilities Act defines a disability as: "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;". 42 **USC** § 12102(2)(A). Ms. Velasquez has been disabled and wheel chair mobile since she lost her leg in 1981. Therefore she is limited in her ability to walk and a disabled person within the definition of the ADA.

Fifth Street Shell is a gas station and grocery store and therefore falls within the definition of a public accommodation. 42 **USC** § 12181(7)(E) and (F).

Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 **USC** § 12182(a). Title III defines "discrimination" as, among other things, a failure to remove "barriers ... where such removal is readily achievable." 42 **USC** § 12182(b)(2)(A)(iv).

Ms. Velasquez visited the Fifth Street Shell on June 27, 2007, and was harmed by the barriers to access that prevented her from enjoying the facilities provided by this public

1  accommodation in that she could not use the restroom because the aisle leading to the
2  bathroom was too narrow to allow her wheelchair to pass.  Ms. Velasquez intends to return to
3  the Fifth Street Shell when the barriers are removed.

4      To establish standing a plaintiff must:

> First [he must have] suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>
> **Pickern v. Holiday Quality Foods Inc.**, 293 F.3d 1133 at 1137 (9th Cir., 2002) citing **Lujan v. Defenders of Wildlife**, 504 U.S. 555, 560-61 (1992).

In being barred from the restroom by the narrow aisle, Ms. Velasquez suffered an injury in fact that was concrete and particular.

The **Pickern** Court further held:

> We hold that a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered "actual injury." Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers "imminent injury."
>
> **Pickern v. Holiday Quality Foods Inc.**, 293 F.3d 1133 at 1138 (9th Cir., 2002).

Since Fifth Street Shell has not remedied the problems in its store, Ms. Velasquez is currently deterred and continues to be injured and will be deterred until the barriers are removed.  She therefore suffers actual and imminent harm.

The actions of Fifth Street Shell caused Ms. Velasquez's injury satisfying the second prong of standing.  Redressability is not an issue since the Court can provide remedy through an injunction ordering the removals of the barriers to access.  **Pickern v. Holiday Quality Foods Inc.**, 293 F.3d 1133 at 1137 (9th Cir., 2002).

Therefore, Ms. Velasquez has standing to bring an action for violation of the ADA against the owners of Fifth Street Shell, Defendant Humboldt Petroleum.

///

**4.    The barriers complained of by Plaintiff are violations of the ADA and applicable California regulations.**

Plaintiff has provided evidence that barriers exist and has a right to a judgment that those barriers are violations of the ADA.

The Department of Justice (DOJ) was tasked by the legislature in 42 *USC* § 12186 (b) to promulgate regulations to enforce the ADA.  The DOJ issued those regulations for new construction in 28 *C.F.R.* §36.406 that incorporates the *Americans with Disabilities Act Guidelines* (hereafter "ADAAG") as Appendix A.  Since Fifth Street Shell was constructed in 1993 after implementation of the ADA it is new construction and the ADAAG is the governing regulation.  A building which was constructed more than 30 months after July 26, 1990 must follow the rules promulgated in the ADAAG to avoid discrimination against disabled persons. 42 *USC* §12183(a)(1).

In addition, Plaintiff has complained of violations of the *California Disabled Persons Act*, the *California Unruh Civil Rights Act* and *California Health and Safety Code* §19955. Since the incidents of this case took place in California, the California regulations also apply. The relevant California regulations are embodied in the *California Code of Regulations Title 24 Accessibility to Public Buildings, Public Accommodations, Commercial Buildings, and Publicly Funded Housing*.

The access aisle for the accessible parking spaces has a grade of 4% to 7.1% (See page 2 and paragraph No. 1 with photos in Dec of GC  Exhibit A) and is therefore in violation of ADAAG 4.3.7 (Accessible Route Slope), ADAAG 4.6.6 (Passenger Loading Zones) and California Title 24 §1129B.4.3 (Arrangement of parking space) each of which require the slope not to exceed 2%.

The cross slope of the accessible parking space varies from 3.9% to 4.2% (See page 3 and paragraph No. 3 with photos in Dec of GC Exhibit A) and is therefore in violation of ADAAG 4.3.7 (Accessible Route Slope), ADAAG 4.6.3 (Parking Spaces) and California Title 24 §1129B.4.3 (Arrangement of parking space) each of which require the slope not to exceed 2%;

The operable portion of the gas pumps (the credit card key entry system) is available

from both a forward approach and a side approach and starts at 58" above the ground and ends at 61" above the ground (See page 4 and paragraph No. 4 with photos in Dec of GC Exhibit A) and is therefore in violation of ADAAG 4.2.6 (Side Reach) which requires side reach to an object not to exceed 54" when a side and forward approach to the object are available;

The clear floor space in front of the single ATM located in the store is 25" (See page 4 and paragraph No. 5 with photos in Dec of GC Exhibit A) and therefore in violation of: ADAAG 4.2.4.1 (Size and Approach for Wheelchairs), ADAAG 4.34.2 (Clear Floor Space for ATMs), California Title 24 §1117B.7.4.1 (Where one ATM is provided), and California Title 24 §1118B.4 (Clear Floor or Ground Space for Wheelchairs) each of which requires the clear floor space to an ATM to be a minimum of 30"; also since the ATM is located in an aisle this configuration represents a violation of ADAAG 4.2.1 (Wheelchair Passage Width) and California Title 24 §1118B.1 (Wheelchair Passage Width) each of which requires a minimum clear width for single wheelchair passage of 32".

The pathway to the restrooms is constricted by an access aisle of 26" (See page 5 and paragraph No. 6 with photos in Dec of GC Exhibit A) and therefore in violation of ADAAG 4.2.1 (Wheelchair Passage Width) and California Title 24 §1118B.1 (Wheelchair Passage Width) each of which requires a minimum clear width for single wheelchair passage of 32".

The sink in the lavatory has approximately 24" to 25" of knee clearance under the bowl of the sink, 27" at the bottom of the sink apron, and the pipes are not insulated (See page 6 and paragraphs No. 8 and 9 with photos in Dec of GC Exhibit A) in violation of: ADAAG 4.19.2 (Height and Clearances) and California Title 24 §1115B.2.1.2.1 (Faucet controls) each of which requires a 29" clearance at the bottom of the sink apron reducing to 27" clearance at the bowl; and ADAAG 4.19.4 (Exposed Pipes and Surfaces) and California Title 24 §1115B.2.1.2.2. (Hot water and drainpipes) each of which require the pipes and drainpipes to be insulated.

These facts have not been disputed by the Defendant or other relevant evidence. Therefore the facts presented by Plaintiff indicate clear violations of the ADA and the applicable California regulations. Plaintiff is a disabled person within the meaning of the

statute and has standing as discussed above. Therefore, Plaintiff has a right to summary adjudication of these issues as a matter of law.

## II.  CONCLUSION

Plaintiff respectfully requests the Court summarily adjudicate the foregoing issues in Plaintiff's favor.

**SINGLETON LAW GROUP**

Dated:    August 21, 2008

 /s/ Jason K. Singleton
Jason K. Singleton,
Richard E. Grabowski, Attorneys for Plaintiff,
**MARCY VELASQUEZ**